UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF NEW YORK,<br><br>*Plaintiffs*,<br><br>v.<br><br>STERICYCLE, INC., SAMW ACQUISITION CORP., and HEALTHCARE WASTE SOLUTIONS, INC.,<br><br>*Defendants*. | CASE NO.:<br><br>**11 0689**<br><br>JUDGE:<br><br>DECK TYPE: Antitrust<br><br>DATE STAMP:<br><br>**FILED**<br>APR 1 3 2011<br>Clerk, U.S. District & Bankruptcy Courts for the District of Columbia |

## HOLD SEPARATE STIPULATION AND ORDER

It is hereby stipulated and agreed by and between the undersigned parties, subject to approval and entry by the Court, that:

### I. DEFINITIONS

As used in this Hold Separate Stipulation and Order:

A.   "Acquirer" means the entity to which defendants shall divest the Divestiture Asset.

B.   "Stericycle" means defendant Stericycle, Inc., a Delaware corporation with its principal place of business in Lake Forest, Illinois, and SAMW Acquisition Corp. (a corporation formed to facilitate the acquisition), and their successors, assigns, subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and all of their directors, officers, managers, agents, and employees.

C. "HWS" means defendant Healthcare Waste Solutions, Inc., a Delaware corporation with its principal place of business in Cincinnati, Ohio, and its successors, assigns, subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and all of their directors, officers, managers, agents, and employees.

D. "Infectious Waste" means regulated medical waste that is generated in the diagnosis, treatment, or immunization of human beings or animals and that has come into contact with bodily fluids, and "sharps" waste, such as syringes and scalpels.

E. "Treatment" means the sterilization of infectious waste at a state-approved treatment facility, including the use of transfer stations to facilitate the shipment of infectious waste to other treatment sites.

F. "Divestiture Asset" means HWS's Bronx, New York transfer station, located at 1281 Viele Avenue, Bronx, New York, 10474.

    1. Tangible assets at the HWS facility identified in this Paragraph I(F), including all research and development activities, equipment, and fixed assets, real property (leased or owned), equipment, personal property, inventory, office furniture, materials, supplies, on- or off-site warehouses or storage facilities; all licenses, permits, and authorizations issued by any governmental organization relating to the facilities; and all facility records, but excluding assets used exclusively in the HWS collection business; and

    2. All intangible assets associated with the HWS facility identified in this Paragraph I(F), including, but not limited to, all contractual rights, patents, licenses and sublicenses, intellectual property, technical information,

computer software (including waste monitoring software and management information systems) and related documentation, know-how, trade secrets, drawings, blueprints, designs, design protocols, specifications for materials, specifications for parts and devices, safety procedures for the handling of materials and substances, quality assurance and control procedures, design tools and simulation capability, all manuals and technical information provided to employees, customers, suppliers, agents or licensees, but excluding assets used exclusively in the HWS collection business.

G. "New York City Metropolitan Area" means the area encompassing the City of New York, and the counties of Westchester, Rockland, Nassau, and Suffolk in New York, the counties of Hudson, Bergen, Passaic, Essex, Union, and Middlesex in New Jersey, and the county of Fairfield in Connecticut.

## II. **OBJECTIVES**

The proposed Final Judgment filed in this case is meant to ensure defendants' prompt divestiture of the Divestiture Asset for the purpose of establishing an independent, economically viable competitor in the provision of infectious waste treatment services in the New York City Metropolitan Area to remedy the anticompetitive effects that the United States allege would otherwise result from Stericycle's acquisition of HWS. This Hold Separate Stipulation and Order ensures that, prior to such divestiture, that the Divestiture Asset remains an independent and economically viable entity that is uninfluenced by Stericycle, and that competition is maintained during the pendency of the ordered divestiture.

## III. JURISDICTION AND VENUE

The Court has jurisdiction over the subject matter of this action and over each of the parties hereto, defendants waive service of summons on the Complaint, and venue of this action is proper in the United States District Court for the District of Columbia.

## IV. COMPLIANCE WITH AND ENTRY OF FINAL JUDGMENT

A. The parties stipulate that a Final Judgment in the form attached hereto as Exhibit A may be filed with and entered by the Court, upon the motion of any party or upon the Court's own motion, at any time after compliance with the requirements of the Antitrust Procedures and Penalties Act (15 U.S.C. § 16), and without further notice to any party or other proceedings, provided that the United States has not withdrawn its consent, which it may do at any time before the entry of the proposed Final Judgment by serving notice thereof on defendants and by filing that notice with the Court. Defendants agree to arrange, at their expense, publication as quickly as possible of the newspaper notice required by the APPA. The publication shall be arranged no later than five (5) calendar days after Defendants' receipt from the United States of the text of the notice and the identity of the newspaper within which the publication shall be made. Defendants shall promptly send to the United States (1) confirmation that publication of the newspaper notice has been arranged, and (2) the certification of the publication prepared by the newspaper within which the notice was published.

B. Defendants shall abide by and comply with the provisions of the proposed Final Judgment, pending the Judgment's entry by the Court, or until expiration of time for all appeals of any Court ruling declining entry of the proposed Final Judgment, and shall, from the date of the signing of this Stipulation by the parties, comply with all the terms and provisions of the

proposed Final Judgment as though the same were in full force and effect as an order of the Court.

C. Defendants shall not consummate the transaction sought to be enjoined by the Complaint herein before the Court has signed this Hold Separate Stipulation and Order.

D. This Stipulation shall apply with equal force and effect to any amended proposed Final Judgment agreed upon in writing by the parties and submitted to the Court.

E. In the event: (1) the United States has withdrawn its consent, as provided in Paragraph IV(A); or (2) the proposed Final Judgment is not entered pursuant to this Hold Separate Stipulation and Order, the time has expired for all appeals of any Court ruling declining entry of the proposed Final Judgment, and the Court has not otherwise ordered continued compliance with the terms and provisions of the proposed Final Judgment, then the parties are released from all further obligations under this Hold Separate Stipulation and Order, and the making of this Hold Separate Stipulation and Order shall be without prejudice to any party in this or any other proceeding.

F. Defendants represent that the divestiture ordered in the proposed Final Judgment can and will be made, and that defendants will later raise no claim of mistake, hardship or difficulty of compliance as grounds for asking the Court to modify any of the provisions contained therein.

## V. **HOLD SEPARATE PROVISIONS**

Until the divestiture required by the proposed Final Judgment has been accomplished:

A. Defendants shall preserve, maintain, and continue to operate the Divestiture Asset as an independent, economically viable entity, with management, sales and operations of such

asset held entirely separate, distinct and apart from those of defendants' other operations. Defendants shall not coordinate the marketing of, or sales by, the Divestiture Asset with their other operations. Within twenty (20) days after the filing of the Hold Separate Stipulation and Order, defendants will inform the plaintiffs of the steps defendants have taken to comply with this Hold Separate Stipulation and Order.

   B. Defendants shall take all steps necessary to ensure that: (1) the Divestiture Asset will be maintained and operated as an independent, economically viable and active competitor in the infectious waste treatment business; (2) the management of the Divestiture Asset will not be influenced by defendants; and (3) the books, records, competitively sensitive sales, marketing and pricing information, and decision-making concerning the Divestiture Asset will be kept separate and apart from defendants' other operations.

   C. Defendants shall use all reasonable efforts to maintain and increase the sales and revenues of the Divestiture Asset, and shall maintain at 2010 or previously approved levels for 2011, whichever are higher, all promotional, advertising, sales, technical assistance, marketing, and merchandising support for the Divestiture Asset.

   D. Defendants shall provide sufficient working capital and lines and sources of credit to continue to maintain the Divestiture Asset as an economically viable and competitive entity, consistent with the requirements of Section V, Paragraphs A and B.

   E. Defendants shall take all steps necessary to ensure that the Divestiture Asset is fully maintained in operable condition at no less than current capacity and sales, and shall maintain and adhere to normal repair and maintenance schedules for the Divestiture Asset.

F.   Defendants shall not, except as part of a divestiture approved by the United States in accordance with the terms of the proposed Final Judgment, remove, sell, lease, assign, transfer, pledge or otherwise dispose of the Divestiture Asset.

G.   Defendants shall maintain, in accordance with sound accounting principles, separate, accurate and complete financial ledgers, books and records that report on a periodic basis, such as the last business day of every month, consistent with past practices, the assets, liabilities, expenses, revenues and income of the Divestiture Asset.

H.   Defendants shall take no action that would jeopardize, delay or impede the sale of the Divestiture Asset.

I.   Defendants' employees with primary responsibility for the Divestiture Asset shall not be transferred or reassigned to other areas within defendants' business, except for transfer bids initiated by employees pursuant to defendants' regular, established job posting policy. Defendants shall provide the United States with ten (10) calendar days' notice of any such transfer.

J.   Defendants shall appoint a person or persons to oversee the Divestiture Asset, who will be responsible for defendants' compliance with this section. This person(s) shall have complete managerial responsibility for the Divestiture Asset, subject to the provisions of the proposed Final Judgment. In the event such person(s) is unable to perform his duties, defendants shall appoint, subject to the approval of the United States, a replacement within ten (10) working days. Should defendants fail to appoint a replacement acceptable to the United States within this time period, the United States shall appoint a replacement.

K.    Defendants shall take no action that would interfere with the ability of any trustee appointed pursuant to the proposed Final Judgment to complete the divestiture pursuant to the proposed Final Judgment to an Acquirer acceptable to the United States.

## VI. DURATION OF HOLD SEPARATE AND ASSET PRESERVATION OBLIGATIONS

Defendants' obligations under Section V of this Hold Separate Stipulation and Order shall remain in effect until (1) consummation of the divestiture required by the proposed Final Judgment or (2) until further order of the Court. If the United States voluntarily dismisses the Complaint in this matter, defendants are released from all further obligations under this Hold Separate Stipulation and Order.

Dated: April 8, 2011

Respectfully submitted,

**FOR PLAINTIFF
UNITED STATES OF AMERICA**

/s/ Lowell Stern

Lowell Stern (D.C. Bar. #440487)
United States Department of Justice
Antitrust Division, Litigation II Section
450 Fifth Street, NW
Suite 8700
Washington, DC 20530
Tel.: (202) 514-3676
Fax: (202) 307-6583
Email: lowell.stern@usdoj.gov

**FOR PLAINTIFF STATE OF NEW YORK**
Eric T. Schneiderman
Attorney General

By: /s/ Richard L. Schwartz
Richard L. Schwartz
Acting Chief, Antitrust Bureau

/s/ Richard E. Grimm
Richard E. Grimm
Assistant Attorney General

/s/ Amy E. McFarlane
Amy E. McFarlane
Assistant Attorney General

Office of the Attorney General
Antitrust Bureau
120 Broadway, Suite 26C57
New York, New York  10271
Tel.: (212) 416-8280
Tel.: (212) 416-6195
Fax: (212) 416-6015
Email: Richard.Grimm@ag.ny.gov
Email: Amy.McFarlane@ag.ny.gov

**FOR DEFENDANTS STERICYCLE, INC. and SAMW ACQUISITION CORP.**

_/s/ David Clanton /BFB/_
David A. Clanton, D.C. Bar # 376880
Brian F. Burke, D.C. Bar #459664
Baker & McKenzie LLP
815 Connecticut Avenue, NW
Washington, DC 20006-4078
Tel: (202) 452-7014
Fax: (202) 416-6929
Email: david.clanton@bakermckenzie.com


**FOR DEFENDANT HEALTHCARE WASTE SOLUTIONS**

_/s/ William Kolasky_
William J. Kolasky, D.C. Bar # 217539
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, D.C. 20006
Tel: (202) 663-6357
Fax: (202) 663-6363
Email: William.kolasky@wilmerhale.com


<u>ORDER</u>

IT IS SO ORDERED by the Court, this _12_ day of _April_ 2011.

_/s/ Beryl A. Howell_
United States District Judge